**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENT BROWN,<br><br>      *Plaintiff,*<br><br>  -against-<br><br>BMW FINANCIAL SERVICES NA, LLC,<br>EQUIFAX INFORMATION SERVICES, LLC,<br>EXPERIAN INFORMATION SOLUTIONS,<br>INC., INNOVIS DATA SOLUTIONS, INC.,<br>and TRANS UNION, LLC,<br><br>      *Defendants.* | Case No. 2:24-cv-07314-NJC-ARL<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

By and through the undersigned counsel, Plaintiff Brent Brown ("Plaintiff"), with knowledge as to his own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that the allegations recited herein have substantial evidentiary support, states as follows:

## Introduction

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"), Plaintiff brings this civil rights action against Defendants BMW Financial Services NA, LLC ("BMWFS"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (together, Equifax, Experian, and Trans Union are the "CRA Defendants") to recover actual, statutory, and punitive damages. In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-shifting action.

2. In 1970, Congress passed the FCRA and enshrined within it the "need to insure that consumer reporting agencies" like the CRA Defendants "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4).

3. "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business.  Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)."  *Dep't. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024).

4. The purpose of the FCRA is "to require that consumer reporting agencies" like the CRA Defendants "adopt reasonable procedures for [reporting information] in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information . . . ." § 1681(b) (emphasis added). *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (observing that the purpose of the FCRA is to address the "serious problem in the credit reporting industry . . . of inaccurate or misleading information"); *Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (stating that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . .") (citing 116 Cong. Rec. 36572 (1970)).

5. The public policy objectives underlying the FCRA remain relevant and compelling today as ever. As recently as October 2022, Congress recognized systemic "failures to efficiently respond to and resolve credit reporting inaccuracies raised by consumers."[1]  The bipartisan

---

[1] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports, Press Release*, 117th Congress (Oct. 14, 2022), https://coronavirus.house.gov/news/press-releases/clyburn-cfpb-chopra-equifax-experian-transunion.

subcommittee's investigation found "longstanding problems with" industry "practices for responding to consumers who challenge credit report errors."  For example, the investigation found that the CRA Defendants "disregard millions of disputes each year without investigation" based on "speculative or overly broad criteria," in a manner "contrary to the FCRA."  Evidence further suggested that the CRA Defendants "may not be allocating enough staff to adequately investigate disputes."

6. The CRA Defendants' policies and procedures to avoid inaccuracies are so insufficient that they often fail to identify and remove even "facially false data," including entries that are "logically inconsistent" or "impossible."[2] Indeed, in this case, the CRA Defendants apparently reported that Plaintiff resided at a UPS Store.

7. The congressional subcommittee also found that "data furnishers" like BMWFS "often conduct pro forma, perfunctory investigations, ignoring consumer-submitted documents and information."[3] Such investigations are likewise "insufficient" under the FCRA.[4]

8. As recently as April 8, 2024, the CFPB acknowledged "continuing accuracy problems in the credit reporting system," specifically finding that the CRA Defendants "failed to ensure the accuracy of credit reports, including by failing to exclude information resulting from alleged identity theft."[5]  The federal agency found that consumer reporting companies such as the

---

[2] *See generally Advisory Opinion on Fair Credit Reporting; Facially False Data*, Bureau of Consumer Financial Protection, 12 CFR Part 1022 (October 20, 2022).

[3] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 5, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.

[4] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports, Press Release, supra,* (citing *Automated Injustice Redux, Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Report Errors*, National Consumer Law Center (February 2019), http://www.nclc.org/wp-content/uploads/2022/08/automated-injustice-redux.pdf.)

[5] *CFPB Finds Violations of Credit Report Accuracy Requirements, Including for Survivors of Human Trafficking, Press Release,* April 8, 2024.

CRA Defendants systematically violated their FCRA obligations to identity theft victims such as Plaintiff, especially their obligation to block the reporting of disputed information.[6a]

9. Moreover, as of 2024, the CFPB is continuing to seek repercussions against Defendant Trans Union on account of the fact that Trans Union "misled millions of consumers" with respect to services related to credit reporting. *See Consumer Financial Protection Bureau v. Transunion, Transunion, LLC, et al.,* No. 22 Cv 1880, 2024 Wl 3888863, at *1 (N.D. Ill. Aug. 20, 2024) (denying Trans Union's motion to dismiss).

10. Plaintiff's experience typifies Congress's findings. A victim of identity theft, Plaintiff disputed the inaccurate BMWFS account with BMWFS and each CRA Defendant, who forwarded those disputes to BMWFS.  In response, each Defendant repeatedly verified that account or otherwise repeatedly failed to delete it, thereby willfully violating the FCRA and denying Plaintiff's rights under that statute.

11. Congress's findings echo what juries and courts have long found in individual cases regarding damages: FCRA violations can have "serious, long-term consequences for consumers, such as blocking access to permanent housing or preventing small businesses from obtaining much-needed lines of credit."[7]  Consumers like Plaintiff "are experiencing no small measure of stress, frustration, and financial hardship as a result of [the] failure to correct legitimate errors on their credit reports."[8]  As recounted below, Plaintiff suffered extensively as a result of Defendants' violations of his consumer rights under the FCRA.

---

[6] The "companies refused to honor consumer requests to block information associated with identity theft based on overbroad criteria; failed to inform consumers when blocks were denied or rescinded; [and] failed to provide victims of identity theft with summaries of rights." *Id.*

[7] *Select Subcommittee Launches Investigation Into Credit Reporting Failures During Pandemic, Press Release*, 117th Congress (May 25, 2022).

[8] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 7, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.

**Plaintiff's Rights as an Identity Theft Victim**

12. Plaintiff has a right to an unencumbered identity.[9]

13. Plaintiff's identity was encumbered by each Defendant's actions.

14. Plaintiff has a right to be notified if Plaintiff's identity credentials or data are compromised, used, or misused.

15. Plaintiff's identity was compromised and/or misused due to the actions of each Defendant.

16. Plaintiff has a right to remediate/recover Plaintiff's identity without undue burden, financial or otherwise.

17. Each Defendant caused Plaintiff undue burden, financial and otherwise, in Plaintiff's attempts to remediate/recover Plaintiff's identity.

18. Plaintiff has a right to be acknowledged as a victim of crime.

19. Despite Plaintiff's repeated disputes about identity theft, each Defendant failed to acknowledge Plaintiff as a victim of a crime.

20. Each Defendant, by refusing to comply with the FCRA, impeded Plaintiff's efforts to recover Plaintiff's identity.

**Summary of Plaintiff's Claims Against Defendants Pursuant to
the Fair Credit Reporting Act and/or New York Fair Credit Reporting Act**

*Violations of FCRA § 1681e(b) and NY FCRA § 380-j*

21. The CRA Defendants violated FCRA § 1681e(b) when they failed to maintain reasonable procedures to assure the maximum possible accuracy when the CRA Defendants prepared and published one or more consumer report(s) about Plaintiff to third-parties.

---

[9] *Foundations of Identity*, Identity Theft Resource Center (accessed November 7, 2024), https://www.idtheftcenter.org/about-us/ (listing Experian as a "financial supporter").

22. The CRA Defendants violated New York General Business Law ("NY FCRA") § 380-j by preparing and publishing one or more inaccurate consumer report(s) about Plaintiff to third parties. Those consumer reports contained inaccurate information about Plaintiff, including but not necessarily limited to the false BMWFS account, which each CRA Defendant knew or had reason to know was inaccurate.

23. Upon information and belief, each CRA Defendant violated NY FCRA § 380-j (a) (3) by *maintaining in* and reporting from the credit file it maintained about Plaintiff information it had reason to know was inaccurate, including but not necessarily limited to the false BMWFS account, which, in fact, resulted from the theft of Plaintiff's identity.

*Violations of FCRA § 1681i and NY FCRA § 380-f*

24. Each CRA Defendant violated FCRA § 1681i(a)(1) and NY FCRA § 380-f(a) by failing to conduct a reasonable reinvestigation of the false BMWFS account after Plaintiff disputed its accuracy to determine whether it was accurately reporting. A reasonable investigation should have included, and each CRA Defendant's investigations did not include or give appropriate weight to, the following items of information included in Plaintiff's dispute(s):

    a. Plaintiff's Nassau County Police Department police report;

    b. Plaintiff's FTC Identity Theft Affidavit;

    c. The fact that the fraudulent BMWFS account was associated with a UPS Store address in Florida;

    d. Plaintiff's real address and address history;

    e. Plaintiff's otherwise excellent credit history;

f.  "Red Flags" data (as the term is defined by the FTC Red Flags Rule, 12 C.F.R. §§ 41.90-92, 222.90-91, 334.90-91, 364.100-01, 717.90-91, and 16 C.F.R. § 681.1-2); and

g.  All other information included in Plaintiff's disputes and interactions with each Defendant as detailed below.

25. Upon information and belief, each CRA Defendant violated FCRA § 1681i(a)(4) by failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes of the false BMWFS account, including but not limited to the information listed above.

26. Each CRA Defendant violated FCRA § 1681i(a)(5) and NY FCRA § 380-f(b)(1) by failing to promptly delete the disputed, false BMWFS account from its credit file for Plaintiff despite the fact that each CRA Defendant, had it conducted reasonable reinvestigations of Plaintiff's disputes, could not have verified that the disputed information was accurate.

27. Each CRA Defendant violated FCRA §§ 1681i(c) and (b) by failing to clearly note the information in question is disputed by Plaintiff or to provide a clear and accurate codification or summary of Plaintiff's statement of dispute of the false BMWFS account in all consumer reports that it reported after Plaintiff submitted a statement of dispute.

28. Each CRA Defendant violated NY FCRA §§ 380-f(c)(1)-(4) by failing to promptly include Plaintiff's statement of dispute or a clear and accurate codification or summary thereof in Plaintiff's credit file and all consumer reports containing the false BMWFS account that the CRA Defendants published after concluding their respective reinvestigations of Plaintiff's disputes.

29. Each CRA Defendant violated FCRA § 1681i(c) by failing to clearly note that Plaintiff disputed the false BMWFS account in each consumer report that it published subsequent to Plaintiff submitting a statement of dispute.

30. Each CRA Defendant violated NY FCRA § 380f(c)(4) by failing to clearly note that Plaintiff disputed the false BMWFS account in each consumer report that it published after concluding its reinvestigation(s) of Plaintiff's disputes.

31. Each CRA Defendant violated 15 USC § 1681c-2 by failing to block the reporting of information in Plaintiff's file that Plaintiff identified as having resulted from identity theft.

32. As a direct and proximate result of the CRA Defendants' violations of the FCRA and NY FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

*Plaintiff's Claims Against Defendant BMWFS Pursuant to the FCRA*

33. Based on acts and omissions described more fully below in the Statement of Facts, BMWFS is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

  a. failing to conduct reasonable investigations of Plaintiff's disputes of the BMWFS account reporting on Plaintiff's credit reports after, upon information and belief, BMWFS received notice of Plaintiff's disputes from each CRA Defendant;

  b. failing to review all relevant information provided to BMWFS by the CRA Defendants concerning Plaintiff's disputes of the disputed BMWFS account, including but not limited to the items of information listed in ¶ 24 above; and

  c. failing to promptly modify, delete, or permanently block any and all information about the disputed BMWFS account that BMWFS, had it conducted reasonable

investigations of Plaintiff's disputes, could not have affirmatively verified as accurate.

34. As a direct and proximate result of BMWFS' violations of the FCRA, recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

## **Jurisdiction and Venue**

35. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). This Court has supplemental jurisdiction of state claims asserted herein under New York law pursuant to 28 U.S.C. §1367(a).

36. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **The Parties**

37. Plaintiff Brent Brown is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides in Uniondale, New York.

38. Defendant BMWFS is a national association that conducts business in the State of New York and is a "furnisher of information" within the meaning of the FCRA. 12 C.F.R. § 1022.41(c).

39. Defendant Equifax Information Services LLC is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

40. Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

41. Defendant Trans Union LLC is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## Statement of Facts

### *Plaintiff's Identity Was Stolen to Open a Car Loan*

42. Plaintiff Brent Brown is a victim of identity theft.

43. An unknown identity thief opened a fraudulent auto loan with BMW Financial Services in Plaintiff's name.

44. Plaintiff did not authorize this loan nor did he have knowledge of its opening.

### *"Red Flag" 1: The Fraudulent Loan Was Associated with a Fraudulent Address*

45. A statement from BMWFS dated February 28, 2022, shows that the address associated with the account was 153 E Flagler St #200, Miami FL, 33131.

46. A cursory search on Google Maps shows that 153 E Flagler St is a UPS Store.

### *Plaintiff's Dispute to BMWFS*

47. In early 2022, after becoming aware of the fraudulent loan, Plaintiff disputed the loan with BMWFS.

48. BMWFS received Plaintiff's correspondence.

49. BMWFS told Plaintiff it was "not able to validate your claim of identity theft."

### *The CRA Defendants Reported Damaging Information about Plaintiff*

50. The BMWFS account eventually became delinquent when, upon information and belief, the thief stopped making timely payments.

51. The BMWFS account was reporting in a delinquent, derogatory manner on Plaintiff's credit reports with the CRA Defendants each CRA Defendant as of January 2022.

52. By late 2022, the BMWFS account was reporting as a repossession and/or charged off on Plaintiff's credit report with each CRA Defendant.

**"Red Flag" 2: Plaintiff's Police Report**

53. In April 2022, Plaintiff filed a report with the Nassau County Police Department (the "Police Report").

54. The report stated: *On [September 17, 2021], Victim Brent got numerous phone calls from Viking collection agency who informed him he owed money to Hertz rental company for damage to a vehicle he rented in Florida. Victim Brent was further informed that a 2020 Kia Soul and a 202 Nissan Altima were rented in his name and that the Altima was returned damaged, the estimate for the damages was $4,555.94. Victim Brent informed the agency that he never rented any vehicles. The phone number used in the rental agreement is (917)628-6753. Victim Brent did view his credit bureau accounts and also noticed that there was an inquiry from BMW Financial services for a vehicle lease in the amount of $40,373.00 in the state of Florida. The unknown suspect did lease a BMW 530i sedan in victim Brents name.*

**Plaintiff's May 2022 Dispute to each CRA Defendant (Plaintiff's "First FCRA Dispute")**

55. In or around May 2022, Plaintiff sent the April 2022 Police Report, attached to a letter disputing the BMW Financial account, to Equifax.

56. In or around May 2022, Plaintiff sent the April 2022 Police Report, attached to a letter disputing the BMW Financial account, to Experian.

57. In or around May 2022, Plaintiff sent the April 2022 Police Report, attached to a letter disputing the BMW Financial account, to Trans Union.

58. Plaintiff's First FCRA Dispute explained that he had "NOTHING to do with this leasing transaction."

59. Plaintiff's First FCRA Dispute requested the BMWFS account be "completely removed from my credit report."

### *The CRA Defendants' Responses to Plaintiff's First FCRA Dispute*

60. Equifax received Plaintiff's dispute letter in or around May 2022.

61. Experian received Plaintiff's dispute letter in or around May 2022.

62. Trans Union received Plaintiff's dispute letter in or around May 2022.

63. On June 5, 2022, Trans Union told Plaintiff that the BMW Financial account had been "verified."

64. In June 2022, Equifax sent Plaintiff a letter stating that "As a result of a dispute you submitted, the [BMWFS] account . . . was removed from your Equifax credit file."

65. The letter further stated that BMWFS "recently requested to have the account information reinserted on your Equifax credit file."

66. BMWFS had "submitted a certification that the account belongs to you and the information below is complete and accurate."

67. Equifax stated that "as a result and based on this certification," it had reinserted the account "as reported."

68. Experian continued to report the fraudulent BMWFS account despite Plaintiff's dispute.

***Plaintiff's November 2022 Dispute to each CRA Defendant ("Second FCRA Dispute")***

69. In November 2022, Plaintiff again disputed the BMW Financial Services account with Equifax.

70. In November 2022, Plaintiff again disputed the BMW Financial Services account with Experian.

71. In November 2022, Plaintiff again disputed the BMW Financial Services account with Trans Union.

72. Plaintiff's Second FCRA Dispute attached the Police Report and explained: *My credit report shows that somebody used my identity and leased a BMW in Florida. I was in contact with BMW about this identity theft and filed a police report. BMW showed me that a mailing address of 153 E Flagler St #200, Miami Florida, 33131 was used for the lease address. I looked up that address and found it is a UPS store!*

73. Plaintiff's Second FCRA Dispute requested a detailed "100-word statement" be added to his report.

***The CRA Defendants' Responses to Plaintiff's Second FCRA Dispute***

74. On December 14, 2022, Trans Union told Plaintiff that it had again "verified" the fraudulent BMW Financial Services account.

75. Moreover, Plaintiff's "100-word statement" was never added to his Trans Union report.

76. On December 16, 2022, Experian informed Plaintiff that it had verified the BMW Financial Services account.

77. Experian told Plaintiff that "IF ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT, THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU TO

DISCUSS THIS MATTER. THE CREDIT GRANTOR REQUESTS THAT YOU

CONTACT THEM DIRECTLY."

78. Experian thus acknowledged two premises:

    a.  that, in Experian's calculation, there was at least a *possibility* that the BMWFS

        "ACCOUNT WAS OPENED AS A RESULT OF IDENTITY THEFT"; and

    b.  that "THE CREDIT GRANTOR MAY NOT KNOW HOW TO CONTACT YOU

        TO DISCUSS THIS MATTER" (this second premise implying an unreasonably

        limited "investigation" by BMWFS into the charges).

79. In light of Experian's acknowledgment of those two premises, perforce, Experian could not

have reasonably verified the accuracy of its reporting a delinquency on the JPMCB Account.

80. Plaintiff did not receive a dispute response from Equifax.

81. Equifax continued to report the disputed account.

82. Moreover, Plaintiff's "100-word statement" was never added to his Equifax report.

### *Plaintiff's June 2023 Dispute Letter to each CRA Defendant ("Third FCRA Dispute")*

83. As of May 23, 2023, the fraudulent BMW account was reporting as charged off on Plaintiff's

credit reports with the CRA Defendants.

84. On June 1, 2023, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

85. The report swore under penalty of perjury that the BMWFS account on Plaintiff's credit

reports was fraudulent.

86. The Report also provided additional details about the identity theft.

87. In June 2023, Plaintiff again disputed the BMW Financial Services account with Equifax.

88. In June 2023, Plaintiff again disputed the BMW Financial Services account with Experian.

89. In June 2023, Plaintiff again disputed the BMW Financial Services account with Trans Union.

90. Plaintiff's Third FCRA Dispute attached his June 1 FTC Identity Theft Report.

91. Plaintiff's Third FCRA Dispute also requested to add a detailed, nuanced statement of dispute to each of Plaintiff's credit reports.

***The CRA Defendants' Responses to Plaintiff's June 2023 Dispute Letter***

92. On June 21, 2023, Equifax told Plaintiff that it had ""Verified this item belongs to you" and that the "Balance [is] past due."

93. Upon information and belief, Equifax did not add Plaintiff's detailed, nuanced statement of dispute to each of Plaintiff's credit reports, nor did Equifax reach out to Plaintiff to offer assistance in cutting it down to fewer than 100 words.

94. On June 23, 2023, Trans Union sent Plaintiff a letter indicating that it had deleted the credit inquiry related to the fraudulent BMWFS Account, but apparently not the Account itself.

***Damages***

95. On or around September 26, 2022, Plaintiff applied for financing on solar panels from Solar Mosaic.

96. Solar Mosaic denied Plaintiff's application on the basis of a "Major Derogatory [Account] reported" on his Equifax report.

97. The false BMWFS account was the only derogatory account on Plaintiff's Equifax report.

98. On or around October 1, 2024, Plaintiff applied to JPMorgan Chase Bank, N.A., to prequalify for a mortgage.

99. Plaintiff's interest rate was higher than it should have been, because of the "Serious Delinquency," i.e., the fraudulent BMWFS Account, on his Equifax and Trans Union credit reports.

100. Plaintiff suffered known and unknown credit damages, including from the publication of Plaintiff's information to third parties.

101. At all times pertinent hereto, the conduct of Defendants as well as their respective agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for the rights of Plaintiff pursuant to the FCRA and/or NY FCRA.

102. As a direct and proximate result of the willful and negligent actions, conduct, and omissions of Defendants, Plaintiff suffered cognizable actual damages, including but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FCRA BY BMWFS

103. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

104. Based on the facts alleged in this Complaint, BMWFS violated FCRA § 1681s-2(b) by its acts and omissions.

105. Due to these violations of § 1681s-2(b) by BMWFS, Plaintiff suffered actual damages, including but not limited to damage to his reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

106. These violations of § 1681s-2(b)(1) were willful, rendering BMWFS liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

107.    In the alternative, BMWFS were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

108.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

109.    Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the FCRA including but not necessarily limited to the following violations:

      a.    The CRA Defendants each violated 15 U.S.C. § 1681c-2;

      b.    The CRA Defendants each violated 15 U.S.C. § 1681e(b);

      c.    The CRA Defendants each violated 15 U.S.C. § 1681i(a)(1);

      d.    The CRA Defendants each violated 15 U.S.C. § 1681i(a)(4);

      e.    The CRA Defendants each violated 15 U.S.C. § 1681i(a)(5);

      f.    The CRA Defendants each violated 15 U.S.C. § 1681i(b); and

      g.    The CRA Defendants each violated 15 U.S.C. § 1681i(c).

110.    Due to the separate and independent violations of the FCRA by the CRA Defendants, Plaintiff suffered actual damages, including but not limited to damage to Plaintiff's reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

111.    These violations by the CRA Defendants of §§ 1681c-2, 1681e, and 1681i were willful, rendering the CRA Defendants liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court

pursuant to § 1681n.

112.    In the alternative, these FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NY FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

113.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

114.    Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the NY FCRA (NY GBL §§ 380-380-u) including, but not necessarily limited to, the following violations:

     a.    The CRA Defendants each violated § 380-j(a);

     b.    The CRA Defendants each violated § 380-j(e);

     c.    The CRA Defendants each violated § 380-f(a);

     a.    The CRA Defendants each violated § 380-f(c)(1);

     b.    The CRA Defendants each violated § 380-f(c)(2);

     d.    The CRA Defendants each violated § 380-f(c)(3); and

     e.    The CRA Defendants each violated § 380f(c)(4).

115.    These violations by the CRA Defendants of NY FCRA §§ 380-j and 380-f were willful, rendering the CRA Defendants liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to NY FCRA § 380-l.

116.    In the alternative, these NY FCRA violations by the CRA Defendants were negligent,

entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to NY FCRA § 380-m.

117.    Plaintiff is also entitled to injunctive relief restraining the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1.  Awarding against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as, with respect to the CRA Defendants, NY GBL § 380-l and § 380-m.

2.  Ordering the CRA Defendants to:

    a.  immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants reported consumer credit information; and

    b.  send updated and corrected credit report information to all persons and entities to whom the CRA Defendants reported inaccurate information about Plaintiff within the last three years;

3.  Enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights; and

4.  Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

_/s/ Adam G. Singer_
Adam G. Singer
**LAW OFFICE OF ADAM G. SINGER, PLLC**
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
212.842.2428
asinger@adamsingerlaw.com

*Counsel for Plaintiff Brent Brown*